DE COZEN MOTOR COMPANY, APPELLANT, v. GEORGE E. KAUFMAN AND GENERAL CREDIT CORPORATION, RESPONDENTS.

Submitted May 11, 1934—Decided October 2, 1934.

For the appellant, *Edward R. McGlynn.*

For the respondent Kaufman, *Theodore J. Labrecque* and *Theodore D. Parsons.*

For the respondent General Credit Corporation, *Matlack & Lautman.*

The opinion of the court was delivered by

PARKER, J. The suit was in replevin for an automobile which plaintiff sold by contract of conditional sale, duly recorded, to a corporation called Keyport Auto Sales Company, owned and controlled by one Morehouse, who, it is said, absconded after reselling the car to defendant Kaufman. The complaint alleged default by the Keyport company in the stipulated payments, and demanded judgment for possession. The defendant Kaufman was charged in the complaint simply as having wrongfully taken and as wrongfully holding possession of the car. His defense, as set up in the answer, was based on section 9 of the Conditional Sales act (*Pamph. L.* 1919 (at *pp.* 463, 464), providing that:

"When goods are delivered under a conditional sale contract, and the seller expressly or impliedly consents that the buyer may resell them prior to performance of the condition, the reservation of property shall be void against purchasers from the buyer for value in the ordinary course of business, and as to them the buyer shall be deemed the owner of the goods, even though the contract or a copy thereof shall be filed according to the provisions of this act."

Kaufman's answer averred that the Keyport concern was a dealer, well known to plaintiff as such, that plaintiff delivered the car in question to the Keyport company for resale, and that defendant Kaufman purchased in good faith from that company and was consequently entitled to hold the property free of the conditional sale agreement held by the plaintiff.

The issue thus raised was, however, complicated by the fact that defendant Kaufman had not paid the Keyport com-

pany in cash, but the sale to him had been financed by General Credit Corporation which had taken over the Keyport company's interest in Kaufman's conditional sale agreement with that company, paid it the balance on the contract and after this suit was begun on default by Kaufman, had seized and sold the car under the provisions of the agreement, and bought it in at its own sale. The General Credit Corporation before the sale petitioned to be admitted as defendant and gave a bond (which we do not find printed) presumably for return of the car in case of an adverse judgment. After the sale to General Credit Corporation the case came on for trial, and there was a verdict of "no cause of action" and judgment was entered in favor of both Kaufman and General Credit Corporation and against the plaintiff.

The grounds of appeal, as argued, in the order argued, are:

1. Refusal to direct a verdict for plaintiff on the ground that Kaufman was not a "purchaser" of the car in the meaning intended by the statute.

2. Admitting General Credit Corporation as a defendant (a) without notice to plaintiff, (b) though the petition did not aver that said corporation was entitled to a possession when the action was commenced.

3. Refusal to direct a verdict against General Credit Corporation on the ground that the evidence showed that at the time suit was begun, that corporation was not entitled to possession; and on the further ground that said corporation was not a "purchaser" within the meaning of the act.

4. Alleged errors in the charge.

Taking up the first point, that Kaufman was not a "purchaser" in the intendment of the statute, the argument is that only one who has acquired title is a "purchaser," and a conditional vendee has no title until the condition is performed.

The statute does not itself define the word "purchaser" though it is used several times. It does define "buyer" as "the person who buys or hires the goods covered by the conditional sale, or any legal successor in interest of such person."

In section 9 we have the clause "purchasers from the buyer for value in the ordinary course of business." The statute does say, however, in section 1 that "purchase" includes mortgage and pledge; and "purchaser" includes mortgagee and pledgee. The question of course is whether in this case the word "purchaser" includes a conditional vendee in good faith, *i. e.,* Kaufman, and also General Credit, which by paying off Keyport Sales Company, acquired its rights as conditional vendor to Kaufman, and at the beginning of the suit stood in the shoes of Keyport Sales Company, and before the trial had acquired the outstanding rights of Kaufman.

In section 5 we have the language: "purchaser from or creditor of the buyer, who without notice of such provision purchases the goods or acquires by attachment or levy a lien on them."

In section 7 is the clause: "subsequent purchasers of the realty for value."

In section 14 "purchasers and creditors described in section 5."

These sections do not throw much light on the matter. But the phrase in section 9 is significant. It reads: "the reservation of property shall be void against purchasers from the buyer for value in the ordinary course of business."

Counsel does not go so far as to say that the phrase quoted implies a *"bona fide* purchaser" in the usual sense. In equity that phrase means not only one who has acquired title, but who has paid value for it, excluding even one who has given a mortgage for part of the purchase price. *Schwarz* v. *Munson,* 94 *N. J. Eq.* 754, and cases cited. Apparently, if Kaufman had borrowed on chattel mortgage part of the price but with it and with his own funds paid the Keyport company in full, this, so far as counsel intimates, would satisfy the statute. But what about the clause "in the ordinary course of business?" Is not a conditional sale a sale in the ordinary course of business as conducted today? And does not the Conditional Sales act, now fifteen years old, and the successor of a much older act, recognize and officially regulate the practice of selling on the installment plan, which grew up many years

ago in connection with, let us say, pianos and sewing machines, and extended to furniture, books, railroad cars and engines and numberless other items of personal property, and which has crept even into heating plants and other appliances known to the common law as fixtures? These last are expressly treated in section 7 of the act. The prevalence of installment sales of automobiles is a matter of common notoriety. To us it is inconceivable that the legislature intended to protect the cash purchaser of an automobile from a dealer who had signed an installment contract for it with his manufacturer or wholesaler, and leave unprotected the less opulent purchaser who had signed an installment contract, no matter how regular and punctual his payments; so that the car could be taken from him when the last payment remained and was not yet due. By the statute, the word "purchaser" includes mortgagee and pledgee; but the language does not justify application of the maxim *"expressio unius, exclusio alterius."* It means that pledgees and mortgagees are to be classed with other purchasers; and among these, as we hold, an installment buyer, and those who have lawfully succeeded to his rights. The court properly refused a direction on this ground. We may add that counsel in his brief seems to treat the conditional sale as in some sense the creature of statute, but it is not so in any sense. It was fully recognized at common law, and it was the injustice to an honest purchaser without notice, of enforcing the reserved title of a previously unknown seller that led to statutes requiring the filing and recording of such contracts in a public office.

The next point is that the trial court acted improvidently in admitting General Credit Company as a defendant without notice. But counsel does not point out, and we fail to find, any objection made to this action before the trial court. The trial seems to have been opened without any allusion to irregularity in the proceeding, and counsel for both defendants participated throughout. There seems to be nothing, therefore, for us to review in the absence of objection, exception, or motion to vacate the order.

It is urged that General Credit when admitted as a party, on June 4th, 1932, had no right to the car, as it had merely taken over the Keyport company's end of the Kaufman contract, and no default had then occurred. But we cannot say the court erred in making the order on this ground, because General Credit was at least potentially interested in anticipation of a default, which in fact occurred and led to a seizure, sale and purchase. We think it clear that General Credit had an interest "which the judgment would affect."

It is further pointed out in the brief, that the admission of General Credit has caused great confusion. In this regard, the brief sets up alleged facts, which if they are indicated at all, are merely alluded to in a colloquy between court and counsel. We are told that General Credit "replevined" the car and posted a bond and thereafter sold the car. The last fact does appear, but no bond is before us and nothing to indicate a recaption. In fact the record does not show an original caption or even the writ of replevin, or the replevin bond by plaintiff. The best we can do under the circumstances is to say that this present point is not presented in such wise as that we can intelligently pass upon it, and hence we cannot discern error. As to the suggestion that the court erred in confining the jury to a decision whether plaintiff was entitled to possession, without discriminating between Kaufman and General Credit Corporation, this will be presently considered under the third point.

That point, is, in brief, that the action was begun on May 20th; that the rights of General Credit as of that date are determinative; that on that date it had no right of possession; hence it was not entitled to defend the suit either at the outset or at the trial.

Assuming for present purposes that May 20th was the crucial date, the fact remains that on that date General Credit had an interest, which under ordinary circumstances would entitle it to maintain replevin. *General Motors Acceptance Corp.* v. *Smith,* 101 *N. J. L.* 154. So if the Keyport company, whose interest it acquired, had been a purchaser for cash from plaintiff, the right would be clear under the case just cited.

But the question remains whether General Credit comes within section 9 as a "purchaser" from Keyport company. We think that it does. There is no suggestion that it had actual knowledge of the conditional purchase by Keyport company from plaintiff, and what it bought, as held in the Smith case, was all interest of the Keyport company in the car. In the Smith case there was no question of the Foley title; here we have a conditional purchase as between plaintiff and the Keyport company. But if General Credit had bought the car outright from Keyport and resold to Kaufman by conditional sale, there would have been no difficulty. Can it be that Kaufman, as we have just held, is protected by the statute, and the purchaser of the seller's end of the contract with him of conditional sale is not protected? We conclude that the statute also applies to the General Credit Corporation and that motion for a direction for plaintiff against that corporation was properly denied.

The fourth and last point is that there was error in the charge. So far as the grounds of appeal are supported by proper exception, we think that what has been said above, at perhaps unnecessary length, justifies us in saying that we find them without merit. So far as the exceptions are inadequate, no review is required.

The judgment will be affirmed.